No. 25-30189
# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Liberty Mutual Insurance Company,

Plaintiff - Appellee

v.

Royal White Cement, Incorporated,

Defendant - Appellant

---

**On Appeal from**

United States District Court for the Eastern District of Louisiana

2:23-CV-3258

---

**BRIEF OF APPELLEE LIBERTY MUTUAL INSURANCE COMPANY**

---

SUBMITTED BY:

Robert A. Mahtook, Jr.
Kaliste Joseph Saloom IV
Mahtook & LaFleur, L.L.C.
600 Jefferson Street, Suite 1000
Lafayette, LA 70501

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Liberty Mutual Insurance Company | Robert A. Mahtook, Jr. and Kaliste Joseph Saloom IV of Mahtook & Lafleur, L.L.C., Lafayette, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Royal White Cement, Incorporated | Harry Morse of Bohman Morse, L.L.C. New Orleans, LA and Cayce Peterson of JJC Law, LLC, Metairie, LA |

*/s/Kaliste Joseph Saloom IV*
Kaliste Joseph Saloom IV
Attorney of record for
Liberty Mutual Insurance Company

## STATEMENT REGARDING ORAL ARGUMENT

Appellee avers that oral argument is not needed.  The district court correctly interpreted the marine cargo insurance policy based on the plain language of the policy, and its ruling will not materially change the meaning and effect of sue and labor clauses in insurance policies. However, Appellee welcomes the opportunity to participate in oral argument should this Honorable Court deem it necessary.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................iv

TABLE OF AUTHORITIES..........................................................v

I. STATEMENT OF THE CASE...............................................1

  A. Liberty Paid Royal White For All Covered Perils Arising From The Spilled Cargo.......................................................................1

  B. The Marine Cargo Policy Excludes Demurrage.........................2

  C. The Limited Expansion of Coverage for Demurrage Does Not Apply.....5

II. SUMMARY OF THE ARGUMENT...........................................7

III. ARGUMENT......................................................................7

  A. Interpretation of Insurance Policies..........................................7

  B. The Policy Does Not Provide Coverage For Royal White's Demurrage Claim.....................................................................10

  C. The "Sue and Labor" Clause Cannot Be Used to Expand Coverage Under the Policy...............................................................14

  D. The District Court's Holding Is Legally Correct.....................16

  E. The Cases Relied Upon By Royal White Are Distinguishable and Unpersuasive.....................................................................19

IV. CONCLUSION..................................................................25

CERTIFICATE OF SERVICE.......................................................26

CERTIFICATE OF COMPLIANCE................................................27

# TABLE OF AUTHORITIES

## Cases

*AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 220 F.Supp.3d 431
(S.D.N.Y.2016) ............................................................................ 19, 20

*Armada Supply Inc. v. Wright*, 858 F.2d 842 (2d Cir.1988). ........................... 20-22

*Collins v. A.B.C. Marine Towing, L.L.C.*, CIV.A. 14-1900, 2015 WL 5797793
(E.D. La. Oct. 2, 2015) ................................................................ 14, 15

*Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.,* 190 F .3d 26 (2d
Cir.1999) ......................................................................................... 8

*Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co.*, 879 F.2d 640
(9th Cir.1989) ............................................................................... 22-25

*Continental Food Prods., Inc. v. Ins. Co. of North America*, 554 F.2d 834
(5th Cir.1977) ................................................................................. 15

*Cont'l Grain Co. v. Armour Fertilizer Works*, 22 F.Supp. 49 (S.D.N.Y.1938) ....... 10

*Hellenic Lines, Ltd. v. Dir. Gen. of India Supply Mission for & on Behalf of Union
of India*, 319 F.Supp. 821 (S.D.N.Y.1970), *aff'd,* 452 F.2d 810
(2d Cir.1971) ........................................................................ 10, 12, 13

*Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293 (2d Cir.1987) ............... 21

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.,* 925 F.Supp. 1053
(S.D.N.Y.1996) .................................................................................. 9

*Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275
(6th Cir.2021) .............................................................................. 12, 13

*Int'l Commodities Exp. Corp. v. Am. Home Assur. Co.*, 701 F.Supp. 448
(S.D.N.Y.1988), *aff'd sub nom. Int'l Commodities v. Am. Home*, 896 F.2d 543
(2d Cir.1990) ................................................................................... 15

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632 (2d Cir.1996) ........... 8

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997) .......................9

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270
  (2d Cir.2000) .....................................................................................................8, 9

*Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 839 N.E.2d 886
  (2005) .................................................................................................................11

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
  472 F.3d 33 (2d Cir.2006) ...............................................................................8, 9

*Reliance Ins. Co. v. The Escapade*, 280 F.2d 482 (5th Cir.1960) ..........................14

*Seiden Assocs., Inc. v. ANC Holdings, Inc.* 959 F.2d 425 (2d Cir. 1992) ................9

*Simmons Refining Co. v. Royal-Globe Ins. Co.*, 543 F.2d 1195 (7th Cir.1976).......22

*Terwilliger v. Terwilliger,* 206 F.3d 240 (2d Cir. 2000)........................................16

*The Apollon*, 22 U.S. 362; 6 L.Ed. 111 (1824) ................................................. 10, 12

*Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773 (1st Cir.1986).............13

*Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225 (11th Cir.2000)..13

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310 (1955) .......................8

**Other Authorities**

7 Couch on Insurance 3d § 101:40..........................................................................17

BLACK'S LAW DICTIONARY (12th ed. 2024)......................................................12

OXFORD DICTIONARY OF ENGLISH (3d ed. 2010).........................................12

## I.   STATEMENT OF THE CASE

### A. Liberty Paid Royal White For All Covered Perils Arising From The Spilled Cargo

The basic facts underlying Royal White's appeal are quite simple and essentially undisputed.  As such, Royal White's appeal is based solely on the district court's correct interpretation of the marine cargo insurance policy issued by Liberty.

Royal White chartered a vessel for the transportation of bags of cement.  See ROA 27, paragraph 8.  The cement—i.e., cargo—was transported in bulk in the hold of the vessel, rather than in containers.  See ROA 27, paragraphs 9-10.  Some of the cargo was damaged during transit and spilled throughout the hold of the vessel, which required cleaning.  See ROA 28, paragraph 14.  Royal White incurred demurrage charges as a result of the delay caused from cleaning the spilled cargo from the vessel.  See ROA 28, paragraph 15.  Liberty paid Royal White nearly $850,000 for all covered perils pursuant to its cargo insurance policy, which included the damaged and destroyed cargo, as well as the cleaning of the vessel.  However, Liberty denied Royal White's claim for demurrage on the basis that the policy does not provide coverage for the demurrage incurred by Royal White.

There is no dispute regarding the valuation of the cargo or the previous insurance disbursements made by Liberty to Royal White as a result of the spilled

1

cargo.  Indeed, Royal White released and forever discharged Liberty from any and all liability for any and all damage, loss expenses, or claims of whatsoever nature arising out of or in in any way connected with the spilled cargo claim, subject to a reservation of rights regarding the demurrage charges.  See ROA 254. However, as established below, the Liberty policy does not provide coverage for the demurrage expenses incurred by Royal White.

In an effort to recover the money it paid for demurrage, Royal White has also filed suit against numerous parties in a separate matter pending before the United States District Court, Eastern District of Louisiana, captioned "*Royal White Cement, Inc. v. M/V WECO HOLLI and Her Tackle, Equipment and Appurtenances, in rem, et al.*", Civil Action No. 2:23-cv-788, Section D. In that lawsuit, Royal White is seeking damages, including the demurrage it incurred, from the parties responsible for causing the spilled cargo and subsequent delay.  As such, the district court's decision granting Liberty's Motion does not hinder Royal White's ability to recover the demurrage expenses from the responsible parties in Royal White's other pending lawsuit.

## B. The Marine Cargo Policy Excludes Demurrage

Liberty issued a Marine Cargo Policy bearing policy number HOOMC10959305 to Royal White, with a policy period of February 7, 2022 to February 7, 2023.  The policy repeatedly, clearly, and unambiguously excludes

insuring risks arising from delays, such as demurrage expenses. Even though the plain and unambiguous language of the policy excludes coverage for expenses arising from delays, Royal White seeks to expand coverage beyond what the parties agreed upon and contracted. Such an interpretation of the policy would erroneously expand coverage to include risks that are expressly excluded from the policy and render numerous clauses in the policy meaningless.

The policy's coverage is subject to terms, conditions, and warranties. One such provision may be found at Section 1 Clause 15 entitled "Warehouse to Warehouse and Marine Extension Clause" which reads, in part, as follows:

> (b) This insurance specifically covers the goods during:
>
> > i. deviation, delay, forced discharge, reshipment and transhipment.

Subsection (b) extends coverage to the cargo during a delay; however, this clause is limited by the following subsection:

> (f) This insurance shall in no case be deemed to extend to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

See ROA 100-01, para. 15. Subsection (f) expressly limits the extended coverage during a delay by not covering expenses proximately caused by delay, such as demurrage—e.g., the policy provides coverage to cargo during a delay caused by a covered peril, but it does not provide coverage for expenses such as demurrage, or

3

losses or damages caused by the delay itself. This is why Liberty reimbursed Royal White for expenses incurred for salvaging the cargo and cleaning the hold, but it declined to pay for the separate demurrage expense which was "proximately caused by delay."

The policy's express exclusion of coverage for expenses arising from delay is reiterated in Section 1 Clause 40 entitled "Delay and Inherent Vice" which reads in full as follows:

> 40. DELAY AND INHERENT VICE
>
> This policy is warranted free from claims for loss of market or loss, damage, deterioration, and expense arising from delay, whether caused by a peril insured against or otherwise, including from inherent vices (or nature) of the insured good(s) itself.

See ROA 109, para. 40. This warranty plainly and unambiguously specifies that the policy does not provide coverage for expenses arising from delays whether caused by perils insured against or otherwise.

Again, the delay exclusion is reiterated in the endorsement entitled "Strikes, Riots & Civil Commotions (Form 12)", as follows:

> Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:
>
> […]

> (c) loss of market or loss, damage or deterioration arising
> from delay;

See ROA 120.

And it is restated again in the endorsement entitled "Section 1 War Risk Policy", as follows:

> 3. This insurance does not cover any loss, damage or
> expense directly or indirectly arising from, contributed to,
> or caused by any of the following, whether due to a peril
> insured against or otherwise:
>
> […]
>
> (c) Delay, deterioration and/or loss of market.

See ROA 128.  Admittedly, the "Strikes, Riots & Civil Commotions" and "War Risk" endorsements do not have a direct application to the disputed claim before this Court; however, they are referenced to highlight the policy's consistent exclusion from coverage of certain expenses arising from, or proximately caused by, delay.

## C. The Limited Expansion of Coverage for Demurrage Does Not Apply

Subject to the foregoing express warrantees and exclusions of coverage for expenses arising from delays, the policy provides a specific expansion of coverage for demurrage charges in one limited circumstance.  This specific coverage may be found at Section 1 Clause 52 entitled "Demurrage" and reads in full as follows:

> 52. DEMURRAGE
>
> This policy shall cover demurrage charges and/or late
> penalties assessed against and paid by The Insured for late

> return of containers when said containers are retained by
> The Insured at the instruction of The Company for
> inspection by The Company's surveyor in investigation of
> loss or damage recoverable under this policy.
>
> The time period for which The Company shall be liable
> for said charges and/or penalties shall begin at the time
> The Company's instructs The Insured to retain the
> containers for inspection and end at the time The
> Company's surveyor instructs The Insured to return the
> containers.

See ROA 112, para. 52.

This clause expands the policy to include demurrage charges specifically incurred for the late return of containers.  This clause bears the only specific reference to "demurrage" in the entire policy and constitutes the exhaustive list of demurrage expenses that are covered under the policy.  The purpose of this expanded coverage for demurrage is based in equity and common sense.  Liberty is responsible for demurrage for the late return of containers when Liberty instructs its insured to retain the containers for inspection.  In that circumstance, the policy provides coverage for demurrage because Liberty is the party responsible for the delay.  But that is not what happened here. The cargo was not shipped in containers, and Royal White did not incur demurrage for the late return of containers.  Instead, Royal White seeks to ignore the plain and unambiguous language of the policy and expand coverage for demurrage to all circumstances.

## II.    <u>SUMMARY OF THE ARGUMENT</u>

Royal White incurred demurrage charges as a result of the delay caused from cleaning the spilled cargo from the vessel.  However, the Liberty policy repeatedly, clearly, and unambiguously excludes claims for expenses arising from, or proximately caused by, delays, such as demurrage.  As such, the Liberty policy does not provide coverage for the demurrage charges incurred by Royal White. The Sue and Labor clause of the policy cannot be transformed into an all-purpose indemnity clause to cover perils for which the parties have not contracted. Additionally, the district court's decision granting Liberty's Motion does not hinder Royal White's ability to recover the demurrage expenses from the responsible parties in Royal White's other pending lawsuit.  For these reasons, the district court's ruling should be affirmed.

## III.    <u>ARGUMENT</u>

### A. Interpretation of Insurance Policies

The Liberty policy features a choice-of-law clause.  See ROA 117, para. 69. That clause instructs that "the rights and obligations" of the parties under the policy "shall by governed by the federal maritime common law of the United States or, in the absence of controlling federal maritime common law of the United States, the law of the state of New York, irrespective of any principles of choice of law."  See ROA 117, para. 69. Under federal maritime choice-of-law rules, state law governs

principles of construction of the maritime contracts of affreightment and insurance. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 321 (1955) (applying state law to marine insurance contract dispute); *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.,* 190 F .3d 26, 30 (2d Cir.1999) ("Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies, and apply federal maritime choice of law rules to determine which state's law to apply. There is no specific federal rule governing construction of maritime insurance contracts." (internal citations omitted)).

Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996) (internal quotation marks and citation omitted). If the parties dispute the meaning of "the terms of an insurance contract, New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.2006) (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir.2000)).

In assessing the intent of the parties, a court must first make a threshold determination as to "whether the terms of the insurance contract are ambiguous." *Morgan Stanley*, 225 F.3d at 275. When an insurance contract's provisions "are

8

unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate,* 472 F.3d at 42. But if a court determines that an insurance provision is ambiguous, it may apply other rules of contract construction, "including the rule of *contra proferentem*, which generally provides that where an insurer drafts a policy any ambiguity in the policy should be resolved in favor of the insured." *Morgan Stanley*, 225 F.3d at 276. However, a court should avoid an interpretation that leaves part of the contract meaningless and should interpret a contract to give effect to all its provisions. *See Ins. Co. of N. Am. v. ABB Power Generation, Inc.,* 925 F.Supp. 1053, 1059 (S.D.N.Y.1996) ("It is a commonplace that a court will interpret a contract to give effect to all of its provisions, and will avoid an interpretation that leaves part of the contract meaningless.").

"An ambiguity exists" in an insurance contract "where the terms … could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley*, 225 F.3d at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC Holdings, Inc*. 959 F.2d 425, 428 (2d Cir. 1992). Here, no party contends that the language of the policy is ambiguous.

Thus, this Court can proceed to apply the plain language of the demurrage-coverage question, just as the district court did.

## B. The Policy Does Not Provide Coverage For Royal White's Demurrage Claim

In order to resolve this matter, the Court needs only to recognize the centuries-old definition of "demurrage" and reconcile it with the term "delay" which is repeatedly referenced in the policy. In doing so, it is clear that the demurrage expenses incurred by Royal White are not covered by the plain and unambiguous terms of the policy.

"In truth, demurrage is merely an allowance or compensation for the delay or detention of a vessel." *Cont'l Grain Co. v. Armour Fertilizer Works*, 22 F.Supp. 49 (S.D.N.Y.1938) (quoting *The Apollon*, 22 U.S. 362, 378; 6 L.Ed. 111 (1824)). "Demurrage is defined as extended freight and is the amount payable for delays by the receiver in loading or unloading cargo. It is stipulated damages for detention … It is plain that when the parties choose, they may contract out of any liability for delay in discharge." *Hellenic Lines, Ltd. v. Dir. Gen. of India Supply Mission for & on Behalf of Union of India*, 319 F.Supp. 821, 831 (S.D.N.Y.1970), *aff'd,* 452 F.2d 810 (2d Cir.1971).

The district court's correct holding that the policy does not cover expenses arising from delay is supported by New York jurisprudence regarding contract interpretation. The district court reasoned that the phrase "arising from" contained

10

in the Liberty policy shares the meaning New York courts have assigned to the phrase "arising out of." Under New York law, "arising out of" means "originating from, incident to, or having connection with." *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472; 839 N.E.2d 886, 889 (2005) (quotation and citation omitted). Applying that understanding to the phrase "arising from" under the subject policy, the district court reasoned that an expense "aris[es] from" delay within the meaning of the policy's delay-and-inherent-vice exclusion if the expense "originat[es] from, [is] incident to, or ha[s] connection with" delay. See ROA 427. Then, after applying New York law regarding contract interpretation, the district court concluded:

> The demurrage assessed against Royal White is an "expense" that "aris[es] from" delay and so is excluded from coverage. Royal White was assessed demurrage because the vessel was held at the dock—i.e., delayed—in Houston while Royal White cleaned up the cement that had spilled inside the vessel. Royal White acknowledges that the "delay cleaning up the mess in Houston caused Royal White[ ] to be charged for demurrage" under the charter party. That demurrage necessarily "originat[es] from, [is] incident to, or ha[s] connection with" delay, *id.* (quotation and citation omitted), because "[d]emurrage is a type of charge for delays."

ROA 428.

Contrary to Royal White's assertion, disregarding New York's interpretation of "arising from" would derogate decades of case law and insurance contract interpretation. It is undisputed that the demurrage incurred by Royal White arose from, or was proximately caused by, the delay in cleaning spilled cargo from the

11

vessel's hold.  See ROA 155.  The policy repeatedly, clearly, and unambiguously excludes claims for expenses arising from delay. Because Royal White admits that the demurrage expenses were caused by delay, the policy does not provide coverage. Any contrary interpretation of the policy would erroneously expand coverage to include risks that are expressly excluded from the policy and render the numerous clauses and warrantees in the policy meaningless.  See *Ins. Co. of N. Am.,* 925 F.Supp. at 1059 (S.D.N.Y.1996) ("It is a commonplace that a court will interpret a contract to give effect to all of its provisions, and will avoid an interpretation that leaves part of the contract meaningless.").

Royal White's attempt to separate "delay" from "demurrage" is illogical and unsupported by case law.   Delay is the basis of demurrage; there cannot be demurrage without delay.  See infra., *The Apollon*, 22 U.S. at 378; *Cont'l Grain Co.*, 22 F.Supp. 49; *Hellenic Lines, Ltd.*, 319 F.Supp. at 831.   That is why demurrage is a consequence of delay.  Indeed, demurrage by definition results from delay.  *See*, e.g., *Demurrage*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Liquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time."); *Demurrage*, OXFORD DICTIONARY OF ENGLISH (3d ed. 2010) ("[A] charge payable to the owner of a chartered ship on failure to load or discharge the ship within the time agreed.").   This is why courts have consistently defined demurrage in terms of delay.  *See*, e.g., *Ingram Barge Co.,*

*LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir.2021) (defining demurrage as "penalties related to delayed loading or unloading of goods" (quotation omitted)); *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1228 n.2 (11th Cir.2000) (defining demurrage as penalties for delays in the loading and unloading of goods); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773, 774 n.1 (1st Cir.1986) (defining demurrage as "a penalty imposed on a charterer of a vessel [...] for delays in loading or unloading the ship's cargo").

The policy at issue provides that the cause of the delay does not affect the exclusion of coverage for demurrage, because the policy does not cover expenses "arising from delay, w*hether caused by a peril insured against or otherwise*." ROA 109, para. 40 (emphasis added). Liberty lawfully contracted out of any liability for expenses arising from delay, regardless of the cause of the delay, which precludes coverage for demurrage. See *Hellenic Lines*, 319 F.Supp. at 831.

Moreover, the policy's specific expansion of coverage for demurrage does not apply to the demurrage expense incurred by Royal White. The Demurrage clause expands the policy to include demurrage expenses specifically incurred for the late return of containers. See ROA 112, para. 52. However, it is undisputed that the Royal White's cargo was shipped in bulk, not containers. As such, the policy's limited expansion of coverage for demurrage does not apply, because the demurrage expense incurred by Royal White was not for delay in returning containers to their

13

owner. Consequently, the policy does not provide coverage for Royal White's demurrage claim.

### C. The "Sue and Labor" Clause Cannot Be Used to Expand Coverage Under the Policy.

The Sue and Labor clause in the policy has no bearing on Royal White's demurrage claim, because the policy does not provide coverage for the demurrage expense incurred by Royal White. Federal courts have long held that the purpose of Sue and Labor clauses is "to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter either to reduce or eliminate a covered loss altogether." *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 489 (5th Cir.1960). However, reimbursement to the insured is only available when the expenses incurred were for the purpose of avoiding or minimizing a loss for which the insurer would have been liable. See *Collins v. A.B.C. Marine Towing, L.L.C.*, CIV.A. 14-1900, 2015 WL 5797793, at *5 (E.D. La. Oct. 2, 2015) ("However, the expenses must have been incurred for the purpose of avoiding or minimizing a loss for which the insurer would have been liable."), citing *Reliance*, 280 F.2d at 489. "In other words, if there is no coverage under a hull policy, the insurer is under no contractual obligation to repay the sue and labor expenses." *Id*.

Likewise, Royal White cannot use the Sue and Labor clause to expand coverage to include demurrage, because "it is also well-settled that 'the sue and labor clause does not operate as an enlargement of the perils underwritten against it.'" See

*Collins*, 2015 WL 5797793, at *7, quoting *Continental Food Prods., Inc. v. Ins. Co. of North America*, 554 F.2d 834, 837 (5th Cir.1977). The District Court for the Southern District of New York similarly has held that a Sue and Labor clause cannot be transformed into an all-purpose indemnity clause to cover perils for which the parties have not contracted:

> Contrary to [insured's] contentions, the immediate source of an insurer's potential exposure to loss must be considered when determining whether the sue and labor clause requires reimbursement. Grounding the clause in the subject matter of the policy is necessary to prevent the clause from becoming an all-purpose indemnity clause for which the parties have not contracted.

*Int'l Commodities Exp. Corp. v. Am. Home Assur. Co.*, 701 F.Supp. 448, 454 (S.D.N.Y.1988), *aff'd sub nom. Int'l Commodities v. Am. Home*, 896 F.2d 543 (2d Cir.1990).

Here, Royal White fulfilled its obligations under the Sue and Labor clause by recovering cargo and cleaning the vessel, which are covered losses under the policy. Likewise, Liberty fulfilled its obligations under the Sue and Labor clause by reimbursing Royal White for the costs incurred for recovery of the cargo and the vessel cleanup. However, as established above, Liberty is not liable for reimbursement for Royal White's demurrage expense, because demurrage is not a covered loss under the plain and unambiguous terms of the policy. The policy does not provide coverage for expenses arising from delays, regardless of whether

the delay is caused by an insured peril or otherwise. See ROA 100-101. Because the demurrage expense was a result of delay, Liberty was never liable for the demurrage expense incurred by Royal White. Royal White cannot now transform the Sue and Labor clause into an all-purpose indemnity clause to cover perils for which the parties did not contract. As such, Royal White's reliance on the Sue and Labor clause to recover reimbursement for demurrage fails.

### D. The District Court's Holding Is Legally Correct.

Contrary to Royal White's assertion, the district court's correct interpretation of the policy does not violate New York's contract interpretation jurisprudence or present practical challenges. Royal White aptly cites *Terwilliger* for the rule that a contract should be read to cohere, and to give a sensible meaning to the whole. See Royal White's brief, pages 17-18, citing *Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir. 2000) ("[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency."). But then Royal White falls short in its application of the rule. Indeed, Royal White's interpretation of the policy requires one to ignore numerous provisions of the policy which expressly exclude coverage for "expense arising from delay, whether caused by a peril insured against or otherwise." ROA 109, para. 40; See also ROA 100-101, para. 15. As detailed in Section III.B. *supra*., the district court's holding follows New York jurisprudence that "arising from" means

"originating from, incident to, or having connection with." See *Maroney*, 5 N.Y.3d at 472. That interpretation under New York law allows an insurer to reasonably define the "universe of possibilities to which it can apply its risk analysis methods...and determine a premium." *Id.* (quoting 7 Couch on Insurance 3d § 101:40, at 101-127).

Conversely, Royal White's interpretation of the policy would render the coverage limitless. For example, what if the M/V WECO HOLLI's hull was damaged during the cleanup which caused additional demurrage expenses for the additional delay before the cleanup could be completed? Under Royal White's interpretation of the policy, Liberty would be on the hook for the demurrage expenses indefinitely due to the delay while the hull was being repaired and cleanup efforts were still underway. This is precisely why the policy unambiguously excludes coverage for expenses arising from delay, regardless of the cause of the delay. Liberty has the right to avoid certain exposure, and that is what it did in this policy in regard to expenses arising from delay. Royal White has not cited, and Liberty's research has not revealed, authority for the proposition that expenses excluded under the basic insurance policy are nonetheless recoverable under the Sue and Labor clause.

Even the hypothetical posed by Royal White on page 18 of its brief regarding a perceived impractical effect of the district court's holding is misguided

and actually demonstrates Royal White's failure to read the policy as a whole.  In

Royal White's hypothetical regarding the cleanup and warehousing of damaged

cargo, it questions the application of the delay and inherent vice exclusion.  See

Royal White's brief, pages 18-19.  Royal White asserts that some costs, such as

hiring contractors and equipment to clean the hold, would be covered, but warns

that other costs, such as warehousing the undamaged cargo, would be excluded as

a "downstream of delay." *Id*. Royal White's erroneously claims that "there is no

through-line between personnel, equipment, and disposal costs on the one hand,

versus warehousing and demurrage costs on the other." *Id*. However, the policy

addresses this exact hypothetical, which demonstrates Royal White's continued

failure to review the policy and apply the unambiguous language.

The Sue and Labor clause addresses the personnel and equipment expenses

for the recovery and cleanup.  ROA 104, para. 29. Likewise, the Warehousing

clause addresses the warehousing charges for storing the salvaged cargo as a result

of an insured peril.  ROA 104, para. 25 (Liberty agrees to pay any warehousing

charges incurred as a result of an insured peril).  In that scenario, Royal White

would still have the duty to sue and labor to remediate the problem—e.g., hire

contractors and equipment to clean the hold and warehouse the undamaged cargo.

Similarly, under the terms of the policy, Liberty would be responsible to pay for

those remediation efforts because none of those expenses "arise from delay," which is why they would be covered under the policy in that hypothetical.

But that is not the situation which is before this Court. We are here because Royal White is seeking coverage for an expense that is not covered in the policy. Royal White conflates Sue and Labor with delay. Just because sue and labor expenses are incurred does not mean there is delay. If the debris removal and the remediation work would have been completed within the designated laytime, then there would have been no demurrage. However, there was a delay which led to the separate demurrage expense. Such an expense, which was unquestionably caused by delay, is not covered by the policy. Liberty's duty does not extend beyond the coverage afforded by the policy. Simply stated: the policy covers expenses for recovery and cleanup, but it does not cover additional expenses for delay such as demurrage. Frankly, the plain language of the policy obviates the need to analyze hypothetical situations, because the policy expressly excludes coverage for "expense arising from delay, whether caused by a peril insured against or otherwise." ROA 109, para. 40.

## E. The cases relied upon by Royal White are distinguishable and unpersuasive.

### 1. *AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*

In *AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 220 F.Supp.3d 431, 440 (S.D.N.Y.2016), the insurer argued that it was not liable for demurrage charges

because the policy only covered representing "physical loss or damage." The court rejected that argument, because the policy covers other items such as "sue and labor" expenses and "extra expenses incurred by the Assured forwarding tile good," as well as additional coverage over the invoice price and "prepaid and/or guaranteed and/or advanced freight," none of which constitutes "physical damage." *Id*.

Here, Liberty does not allege that the policy only provides coverage for "physical loss or damage." Indeed, it is Liberty's position that the policy expressly provides coverage for losses which do not involve "physical loss or damage," including Demurrage and "Sue and Labor" expenses. However, as discussed above, the Liberty policy provides certain exclusions and limitations to the coverage for these items—namely, demurrage is limited to charges incurred for the late return of containers and "Sue and Labor" only applies to losses for which the Liberty would have been liable. The demurrage incurred by Royal White was not for the late return of containers and, as such, the "Sue and Labor" clause does not apply to the demurrage expenses since Liberty is not liable for such expenses under the policy. Therefore, *AGCS Marine* is distinguishable from the case at bar.

2. *Armada Supply Inc. v. Wright*

In *Armada*, the court awarded the plaintiff various sue and labor expenses, including an unspecified amount for demurrage charges incurred. *Armada Supply*

*Inc. v. Wright*, 858 F.2d 842, 853 (2d Cir.1988).  Of note, the parties did not

dispute whether the policy covered demurrage; rather, the dispute centered on the

various amounts of sue and labor expenses allowed and disallowed.  *Id*.  The court

did not discuss or analyze any clauses, warranties, or exclusions that may affect

demurrage claims under the policy.  However, the court reiterated the same general

principal that sue and labor expenses are available when the expenses incurred

were for the purpose of avoiding or minimizing a loss for which the insurer would

have been liable.  The court maintained that "Sue and labor expenses are those

reasonable costs borne by the assured to mitigate the loss and thus **reduce the**

**amount to be paid by the underwriter**." *Armada*, 858 F.2d at 853 (emphasis

added).  However, the court did not address the antecedent question this Court

must address here—whether the demurrage expense is itself a covered loss under

the policy.  *Id*. at 853-54.

Here, Liberty is not liable for demurrage pursuant to the plain and

unambiguous language of the policy.  Whether the delay was caused by a covered

loss or by mere operational slowness, demurrage is always tied to delay in

unloading or using the vessel. The policy exclusions do not distinguish between

sources of delay—demurrage, falling into this category, is not recoverable.  As a

general rule, plain or unambiguous language will be given its ordinary meaning

and effect.  See *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d

Cir.1987), citing *Simmons Refining Co. v. Royal-Globe Ins. Co.*, 543 F.2d 1195, 1197 (7th Cir.1976). Likewise, courts may not create an ambiguity where none exists. See *Simmons*, 543 F.2d at 1197. Because the demurrage expense is not covered under the policy, Liberty justifiably denied Royal White's additional claim for demurrage. As such, *Armada* is distinguishable from the case at bar.

3.    *Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co.*

Similarly, Royal White's reliance on *Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co.*, 879 F.2d 640, 641 (9th Cir.1989), is misplaced. That decision does not address or even mention demurrage. The thrust of the opinion is the determination of the proximate cause of a loss. Nevertheless, Liberty will address the case.

Commodities Reserve had contracted to sell chickpeas and cumin seeds to purchasers in Venezuela and chartered space on the M/V West Lion to transport the cargo from Turkey to Venezuela. *Id.* at 641. The cargo was insured under a marine cargo policy issued by St. Paul. *Id.* After loading the cargo, the vessel was detained by Greek authorities for carrying munitions, although Commodities Reserve was not involved in the munitions carriage. *Id.* The cargo itself was not detained, but the captain refused to release it without a waiver of liability. *Id.* Commodities Reserve obtained a court order in Crete to release the cargo and arranged for its transshipment to Venezuela. *Id.*

The insurance policy included a Sue and Labor Clause, which required the insurer to reimburse the assured for expenses incurred in preventing a loss for which the insurer would be liable. *Id*. at 642.  Commodities Reserve sought recovery under this clause and another clause covering warehousing and forwarding charges. *Id*.  However, the policy also contained a Free of Capture & Seizure (F.C. & S.) Clause, which excluded coverage for losses arising from detainment. *Id*.  St. Paul argued that this clause excused it from liability. *Id*.

The court's decision hinged on the interpretation of policy terms and the determination of proximate cause. *Id*. at 644.  The court found that the dominant cause of the potential loss from infestation was the detention in Crete by Greek authorities, which was excluded from coverage under the F.C. & S. Clause. *Id*. Although Commodities Reserve forwarded the cargo to prevent infestation, the need to transship arose solely because of the detention. *Id*.  Therefore, the expenses related to transshipment were not covered.

Separately, the court found that the litigation expenses incurred to secure the release of the cargo were recoverable, because the Free of Capture and Seizure Clause did not preclude recovery of those expenses as the detention was not the proximate cause of the litigation. *Id*. at 645.  Indeed, the Greek authorities did not claim jurisdiction over the cargo, and therefore the litigation was necessary due to the captain's refusal to release it.  *Id*.  The court reasoned that "[t]he Sue and Labor

Clause required Commodities Reserve to 'sue...for...recovery of said goods and merchandise' in case of loss or misfortune, and mandates payment of the charges by the insured." *Id*.

Despite Royal White's assertion, the policy in *Commodities Reserve* did cover legal expenses *qua* legal expenses for a covered loss. Indeed, as the court stated, the Sue and Labor Clause required Commodities Reserve to sue for the recovery of the cargo due to the captain's refusal to release them, and mandated St. Paul to cover that legal expense. That is the foundation of **Sue** and Labor clauses. Commodities Reserve's action in suing for the release of its cargo was for the mutual benefit of St. Paul to reduce or eliminate a covered loss. But for Commodities Reserve suing, St. Paul would have been mandated to cover the loss of the withheld cargo. As such, the litigation expenses were covered under the policy. The same is true in the case at bar. Royal White incurred expenses salvaging the bags of cement and cleaning the hold. Liberty paid those expenses, because those expenses were incurred to reduce or eliminate a covered loss under the policy.

Interestingly, the court's analysis of the litigation expenses did not mention or address delay, as averred by Royal White. That is because St. Paul's reliance on the Delay Clause was in reference to the claims resulting from the infestation and transshipment of the cargo, not the separate claim for litigation expenses. In fact,

the court stated that "Commodities Reserve's claim for litigation expenses incurred to secure the release of the cargo involves different circumstances from those pertaining to the transshipment of cargo." *Id*. at 645.  Likewise, while addressing an alternative argument made by Commodities Reserve, the court reiterated the important legal precept that "[t]he loss for which compensation is sought must still be covered under the policy." *Id*. at 646. That principle is still true and resonates with this case.  Expenses for recovery and cleanup are covered, but separate expenses arising from delay, such as demurrage, are not.  As such, Royal White's claim for demurrage expenses was rightfully denied.

## IV.   <u>CONCLUSION</u>

Royal White incurred demurrage expenses due to delays stemming from the vessel's spilled cargo.  However, the Liberty policy repeatedly, clearly, and unambiguously excludes coverage for "expense arising from delay," and demurrage—by definition—arises from delay.  As such, the Liberty policy does not provide coverage for the demurrage expenses incurred by Royal White.  For these reasons and the reasons stated above, this Honorable Court should affirm the district court's judgment.

Respectfully submitted,

MAHTOOK & LAFLEUR, LLC


*/s/Kaliste Joseph Saloom IV*
ROBERT A. MAHTOOK, JR., #17034
KALISTE JOSEPH SALOOM IV, #35996
600 JEFFERSON ST., SUITE 1000
LAFAYETTE, LA 70501
TELEPHONE: (337) 266-2189
FAX: (337) 266-2303
EMAIL:     rmahtook@mandllaw.com
              jsaloom@mandllaw.com
Counsel for Plaintiff/Appellee,
Liberty Mutual Insurance Company




**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has this day been served

on all known counsel of record in this proceeding by CM/ECF Court Filing System.

Lafayette, Louisiana, this 1st day of August, 2025.


*/s/Kaliste Joseph Saloom IV*
KALISTE JOSEPH SALOOM IV

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 5892 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

   This document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2505, in Times New Roman 14.

   */s/Kaliste Joseph Saloom IV*
   KALISTE JOSEPH SALOOM IV