No. 25-30189
IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Liberty Mutual Insurance Company,

Plaintiff - Appellee

v.

Royal White Cement, Incorporated,

Defendant - Appellant

**On Appeal from**
United States District Court for the Eastern District of Louisiana
2:23-CV-3258

**REPLY BRIEF OF APPELLANT ROYAL WHITE CEMENT, INC.**

SUBMITTED BY:

Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

Cayce Peterson
JJC Law, LLC
111 Veterans Memorial Blvd
Metairie, LA 70005

# **TABLE OF CONTENTS**

**Contents**……………………………………………………………………**Pages**

Table of Contents ...................................................................................................... ii

Table of Authorities ................................................................................................. iii

    I.   Summary of the Argument..............................................................................1

    II.  Argument ........................................................................................................1

        1.  Liberty Mutual agrees there was a covered loss, and Royal White incurred sue and labor expenses ...............................................................1

        2.  Demurrage is, here, a sue and labor expense .............................................3

        3.  In Liberty Mutual's cited cases, there is no sue and labor because there is no covered loss .................................................................................4

        4.  Cargo policies have excluded delay for decades. Cargo policies have, until the district court's opinion, always covered demurrage, when it is an appropriate sue-and-labor expense ...........................................................6

        5.  Liberty Mutual's reading of the policy fails textual analysis....................10

    III. Conclusion ..................................................................................................12

Certificate of Service ................................................................................................13

Certificate of Compliance .........................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*AGCS Marine Ins. Co. v. World Fuel Services, Inc.*,
   220 F.Supp. 3d 431 (S.D.N.Y. 2016) ...................................................................7

*Archer Daniels-Midland v. Phoenix Assur. Co.*,
   975 F.Supp. 1137 (S.D. Ill. 1997)..........................................................................6

*Armada Supply Inc. v. Wright*,
   858 F.2d 842 (2d Cir. 1988) ............................................................................ 7-8

*Blaine Richards & Co. v. Marine Indemnity Assurance Co. of America*,
   635 F.2d 1051 (2d Cir.1980) ............................................................................ 5-6

*Blasser Bros. v. Northern Pan-American Line*,
   628 F.2d 376, 386 (5th Cir. 1980) .........................................................................5

*Century Aluminum Co. v. Certain Underwriters at Lloyd's, London*,
   97 F.4th 1019 (6th Cir. 2024) ................................................................................8

*Collins v. A.B.C. Marine Towing, L.L.C.*,
   No. 14-CV-1900, 2015 WL 5797793 (E.D. La. Oct. 2, 2015)..............................4

*Commodities Reserve Co. v. St. Paul Fire & Marine Ins*,
   879 F.2d 640 (1989)...........................................................................................6, 8

*Continental Food Prods., Inc. v. Ins. Co. of N. Am.*,
   554 F.2d 834 (5th Cir. 1977) .................................................................................4

*Int'l Commodities Exp. Corp. v. Am. Home Assur. Co.*,
   701 F.Supp. 448 (S.D.N.Y.1988) ...................................................................... 4-5

*Lanasa Fruit Steamship & Importing Co v. Universal Ins. Co.*,
   302 U.S. 556 (1938)..................................................................................... 6-7, 10

*Reliance Ins. co. v. The Escapade*,
   280 F.2d 482 (5th Cir. 1960) .................................................................................4

*SS Co. v. North British Merc. Ins. Co.*,
　48 F.Supp. 808, 812-813 (E.D. Mich. 1943) ........................................................... 9

*St. Paul Fire & Marine Ins. Co. v. Pacific Cold Storage Co.*,
　157 F. 625 (9th Cir. 1907) ............................................................................... 9-10

**Statutes and Other Authorities**

Leslie J. Buglass, *Marine Insurance and General Average in the United States,*
　(2d Ed. 1981). .................................................................................................. 6-7

# SUMMARY OF THE ARGUMENT

Liberty Mutual never denies that Royal White incurred demurrage as part of Royal White suing and laboring to preserve the cargo. Liberty Mutual just contends that never mind the coverage, the delay and inherent vice exclusion operates to exclude demurrage, even when demurrage is a proper sue and labor expense.

In making that argument, Liberty Mutual disagrees with the district court. More crucially, it fundamentally misunderstands its own policy. The policy covers the cargo, not the vessel. The delay exclusion applies to the cargo, not the vessel. The policy only covers demurrage when demurrage is a proper sue and labor expense. Royal White's claim is for covered demurrage as a sue and labor expense, not for delay of the cargo. Coverage for that claim under the Liberty Mutual policy both accords with all prior case law on sue and labor and reads the policy coherently.

# ARGUMENT

1. *Liberty Mutual agrees there was a covered loss, and Royal White incurred sue and labor expenses.*

In its opinion, the district court reasoned that demurrage is not covered as a sue and labor expense because the policy does not afford coverage in the first place. It concluded that "if the policy does not cover the loss, there is no duty to reimburse the insured for sue-and-labor expenses linked to that loss[,] because sue-and-labor

1

clauses do not operate as an enlargement of the perils underwritten against. The upshot is that an insurer need not reimburse an insured under a sue-and-labor clause where the policy does not afford coverage." ROA.430 (cleaned up). Contra the district court, Liberty Mutual concedes at the jump that there is, in fact, a covered loss: that it "paid Royal White nearly $850,000 for all covered perils pursuant to its cargo policy, which included the damaged and destroyed cargo, as well as the cleaning of the vessel." Brief at 1.

Liberty Mutual's payment to Royal White for damaged and destroyed cargo was appropriate without reference to the sue and labor clause. The policy is a cargo policy, and if the cargo is damaged, the cargo policy has to pay for the damaged cargo, assuming a covered peril. But in a sense, Liberty Mutual's payment for cleaning the vessel does not follow: cleaning the vessel is not damage to the cargo, and there is no vessel coverage under the cargo policy. The policy covers the goods, not the vessel: under "goods insured," it lists "Building/Construction Materials/Supplies," ROA.90. It defines those goods as "all shipments of lawful goods and/or merchandise properly packaged for transportation [. . .]" ROA.97. Except the sue and labor clause, there is no provision anywhere that that requires Liberty Mutual to pay for expenses incurred in cleaning the vessel.

Liberty Mutual's payment for cleaning the vessel was hardly gratuitous. Liberty Mutual paid to clean the vessel because Royal White was required to clean

2

the cement out of the vessel as part of mitigating a covered loss. Vessel cleaning is a classic sue and labor expense, and Liberty Mutual properly covered it as such. Where the district court reasoned that there is no covered loss and there is no sue and labor appendant to an uncovered loss, that conclusion is wrong.

2. *Demurrage is, here, a sue and labor expense.*

Therefore, unlike the district court, Liberty Mutual puts two provisions of the policy into conflict. Liberty Mutual reasons that even if demurrage was here a sue and labor expense, the delay exclusion excludes demurrage: it is not that there is no covered loss (there is); there is just a conflict between the sue and labor clause on the one hand, and the delay exclusion on the other, and the delay exclusion wins. There are two fatal problems with this argument: first, it is inconsistent with an ordinary reading of the policy. The exclusion of delay and inherent vice means delay and inherent vice of the cargo, not delay or inherent vice of the vessel. The cargo is insured; the vessel is not.

Second, it is inconsistent with case law. The delay and inherent vice exclusion has existed since 1949. It has always, to Royal White's research, applied to the cargo, and it has never been applied anywhere except cargo. Cargo underwriters have been presented with demurrage charges from the vessel as sue and labor expenses, and they have argued demurrage charges are not covered, and they have lost. Royal White will address these in reverse order.

3

> *3. In Liberty Mutual's cited cases, there is no sue and labor because there is no covered loss.*

Before showing that the delay and inherent vice exclusion is inapposite, Royal White will reestablish, briefly, that the case law Liberty Mutual relies on is itself inapposite. When Liberty Mutual cites cases to support its position that there is no coverage here, universally, those are cases where the underlying loss is not covered. There can be no sue and labor expenses in remediating an uncovered loss.

Liberty Mutual cites to *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 489 (5th Cir.1960), to *Continental Food Prods., Inc. v. Ins. Co. of North America*, 554 F.2d 834, 837 (5th Cir.1977), and to *Collins v. A.B.C. Marine Towing, L.L.C.*, CIV.A. 14-1900, 2015 WL 5797793, at *5 (E.D. La. Oct. 2, 2015). Addressed in Royal White's brief, in all those cases, there was no coverage for the underlying loss, so the assured could not help the underwriter by suing and laboring to remedy a problem that the underwriters would never have to face. Those would only apply if there were no covered loss in the first place. Liberty Mutual concedes that there was.

Liberty Mutual cites to *Int'l Commodities Exp. Corp. v. Am. Home Assur. Co.*, 701 F.Supp. 448, 454 (S.D.N.Y.1988). There though, the assured sought to recover legal expenses from the cargo policy. After careful review, the district court concluded "no," because "[n]one of [the assured's] actions in relation to the dispute were designed to protect the cargo itself from loss or damage arising from the

4

diversions." The analysis in that case shows just why there is coverage here: Royal White incurred demurrage to remediate the covered spill. In order to clean the vessel and remove the damaged cargo, Royal White was obligated to pay demurrage. The demurrage charge was incurred precisely to "protect the cargo itself from loss or damage" by giving the assured time to remove it.

Separately, Liberty Mutual expresses its concern that Royal White's reading of the sue and labor clause would expand coverage, making it limitless. What if, Liberty Mutual posits, the vessel's "hull was damaged during cleanup which caused additional demurrage expenses for additional delay before the cleanup could be completed?" Brief at 17. *Int'l Commodities* provides the answer: in marine insurance, courts look at the immediate cause, not the remote cause. *Id.* at 454 (citing *Blaine Richards & Co. v. Marine Indemnity Assurance Co. of America,* 635 F.2d 1051 (2d Cir.1980)). If there were such an occurrence, the court would just look at the immediate cause, and it would make a coverage determination. If, say, a forklift removing the cement poked a hole in the hull and a patch were required to prevent water ingress and preserve the cement for offloading, then yes, of course, that would be a sue-and-labor expense because it would be incurred to protect the cargo and remediate the loss. This is the precise holding of *Blasser Bros. v. Northern Pan-American Line*, 628 F.2d 376, 386 (5th Cir. 1980): expenses, like "salvage operations and removal of cargo to safekeeping," and indeed "any action which [the

5

Insured] took to preserve the cargo or mitigate damages would clearly be includable" as sue and labor expenses (assuming, always, a covered loss in the first instance). Royal White was required to incur demurrage to remove the cargo to safekeeping. Demurrage was, patently, an expense to preserve the cargo and mitigate damages.

> 4. *Cargo policies have excluded delay for decades. Cargo policies have, until the district court's opinion, always covered demurrage, when it is an appropriate sue-and-labor expense.*

In *Lanasa Fruit v. Universal Ins. Co.,* 302 U.S. 556 (1938), the Supreme Court held that "delay," in a cargo policy, is only excluded when the loss is delay-qua-delay, not when it is downstream of a covered peril. *Lanasa* has been cited repeatedly for that proposition. See e.g. *Commodities Reserve Co. v. St. Paul Fire & Marine Ins.*, 879 F.2d 640, 643 (9th Cir. 1989); *Blaine Richards*, 635 F.2d at 1054; *Perzy v. Intercargo Corp.*, 827 F.Supp. 1365, 1375 (N.D. Ill. 1993).

In fact, the delay exclusion in the Liberty Mutual policy was created in response to *Lanasa*, to remove the downstream inquiry. See *Archer-Daniels-Midland v. Phoenix Assur. Co.*, 975 F.Supp. 1137, 1146 (S.D. Ill. 1997), citing Leslie J. Buglass, *Marine Insurance and General Average in the United States,* pp. 79-81 (2d Ed. 1981).[1] The delay and inherent vice exclusion excludes coverage for delay and inherent vice of the cargo, whether downstream of a covered peril or otherwise.

---

[1] According to Buglass, that cargo underwriters are not responsible for delay "was thought to be implied in every marine insurance policy" until *Lanasa*, but that "the effect of this (*Lanasa*) decision is nullified by the Delay clause in most cargo policies."

But in every single case, the question is, invariably, delay of the cargo. Never once has the delay exclusion been applied to demurrage of the vessel, or to anything else except the cargo. According to Buglass, delay has been impliedly excluded impliedly in the policy before *Lanasa*, and explicitly after *Lanasa*. This delay clause is in the American Institute of Marine Underwriters (AIMU) form cargo clauses, dating to 1949.[2] That is, since 1949, cargo policies have, in no uncertain terms, excluded delay and inherent vice, even if downstream of a covered peril.

On the other hand, there have been multiple cases where demurrage has been covered as a sue and labor expense, even when the cargo policy excludes delay. *AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 220 F.Supp.3d 431, 440 (S.D.N.Y. 2016) is one. There, the assured / cargo owner incurred demurrage. AGCS had a policy with a functionally-identical delay exclusion,[3] argued that there was no coverage for demurrage. The Southern District of New York concluded that the argument is "quite unpersuasive," and that the demurrage charge is covered as a sue and labor expense.

---

[2] The AIMU form is available here: https://www.aimu.org/formsword/32B-8.doc. The current form is here: https://www.aimu.org/forms/Cargo%20Clauses%20All%20Risk%20(in%20tables).pdf (last checked August 4, 2025).

[3] ROA.327, at Paragraph 41. The delay exclusion provides "This insurance is warranted free from, and shall not cover, loss of market or loss, damage, deterioration or expense arising from delay, regardless of whether such delay is caused by a risk insured against or otherwise, unless such risks are expressly assumed elsewhere in the policy."

So too, *Armada Supply Inc. v. Wright*, 858 F.2d 842 (2d Cir. 1988). There, fuel was shipped from Rio de Janeiro to New York. It was contaminated on arrival, and had to be reconditioned. The owner sought sue and labor expenses, including demurrage. The district court found demurrage was a covered sue and labor expenses, 665 F.Supp. 1047, 1076 (S.D.N.Y 1987) and the Second Circuit agreed, calling them "obviously reimbursable as a necessary step in the reconditioning process." 858 F.2d at 853.[4]

So too, *Commodities Reserve*, 879 F.2d at 643. Liberty Mutual chides Royal White, observing that *Commodities Reserve* does not involve demurrage. Royal White did not suggest that it did. But the *Commodities Reserve* policy does have the same delay clause the Liberty Mutual policy. When the insured spent funds to free the cargo from detention because the *vessel* had been detained, but the *cargo* had not, that was a covered expense. *Id*. at 645. If cargo and vessel are interchangeable under the policy, then *Commodities Reserve* came out the wrong way. Instead, even though the vessel had been delayed through an uncovered risk, expenses to free the cargo were covered sue and labor expenses.

---

[4] The *Armada Supply* court did not cite any delay exclusion, so Royal White cannot say with certainty that there was, in fact, a delay exclusion in the policy. However, given that the delay exclusion is in the AIMU form, and given Buglass, Royal White would submit that there all-but-certainly was.

More recently is *Century Aluminum Co. v. Certain Underwriters at Lloyd's, London*, 97 F.4th 1019 (6th Cir. 2024), which came out after briefing had been closed in the district court. There, the assured was shipping alumnia ore. The Army Corps shut down locks on the Ohio River, depriving Century of the ore shipped by barge, so Century shipped the ore by rail, at significant added expense. The policy covered up to $1m of extra transportation expenses, but otherwise excluded losses due to delay. *Id.* at 1022. There was no underlying peril because the cargo itself was delayed and delay was excluded, so shipping the cargo via rail car was not a sue and labor expense. *Id.* at 1026.

But the Sixth Circuit continued, explaining that "[h]ad Century faced a risk of physical loss or destruction, such as if the delay resulted in the cargo rotting or the barges capsizing," the sue and labor clause would be effective because the sue and labor clause "may operate as a separate contract requiring payment beyond the limits stated elsewhere in the insurance policy." *Id.* This is the same result as in all the cases cited above, and in more than a century of case law interpreting sue and labor clauses. See e.g. *St. Paul Fire & Marine Ins. Co. v. Pacific Cold Storage Co.*, 157 F. 625 (9th Cir. 1907) (holding that the costs of moving cargo off a vessel are covered sue and labor expenses under a cargo policy); *SS Co. v. North British Merc.*

9

*Ins. Co.*, 48 F.Supp. 808, 812-813 (E.D. Mich. 1943) (covering a support tug and watchmen as sue and labor expenses under a hull policy).[5]

5. *Liberty Mutual's reading of the policy fails textual analysis.*

Given this background, one possibility is what Liberty Mutual now suggests: cargo underwriters have had a delay exclusion in their policy for decades, and even though the policy covers the cargo, not the vessel, that delay exclusion applies to both the covered cargo and the uncovered vessel. Cargo underwriters failed to invoke the language in the face of demurrage claims, and even while disputing those demurrage claims under different policy language. Cargo underwriters' tragic misunderstanding of their own policy means they have lost in court and paid claims they did not owe. Now, in denying coverage to Royal White, cargo underwriters have finally righted the wrong.

Another possibility – respectfully, a likelier possibility – is that cargo underwriters have not been misreading their policy language for decades. Instead, the cargo policy applies to the cargo, not to the vessel. The delay and inherent vice exclusion was inserted after (and in response to) *Lanasa*, to exclude delay of the cargo, covered peril or no. There is no need to exclude demurrage of the vessel because the cargo policy does not apply to the vessel.

---

[5] Neither moving cargo off the vessel under a cargo policy, nor support tugs and watchmen under a hull policy, are covered expenses. They only become covered when they are sue and labor expenses.

This second interpretation has the salutary effect of reading the policy as a whole: as Royal White pointed out in depth, it is plain by the text of the delay and inherent vice exclusion that it applies to cargo. There is no such thing as inherent vice of the vessel. That is called unseaworthiness. The full text of the exclusion excludes claims for loss of market or loss, damage, deterioration, and expense arising from delay. Of this series, all apply to the cargo, and none naturally fit the vessel. There is no need to exclude vessel claims because the cargo policy covers the cargo, not the vessel. Where there is a sue and labor expense, though, that is an expansion of coverage to what would otherwise be uncovered.[6]

A coherent read of the policy avoids this. The policy covers the cargo, not liability. The policy is an all-risks policy, but it is subject to exclusions. If the cargo is delayed, there is no claim for delay of the cargo because of the delay exclusion. If, on the other hand, the cargo topples over in the hold of the vessel and the assured must remove it and clean it out, then the expenses in doing so – including demurrage – are not delay of the cargo, they are sue and labor expenses, and they are covered.

---

[6] Liberty Mutual upbraids Royal White for suggesting that warehousing would not be covered because it is downstream of delay – after all, the policy covers warehousing. But that is just Royal White's point: the policy covers sue and labor expenses too. With warehousing, just as with demurrage, Liberty Mutual's interpretation invites a conflict in the policy.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed, and judgment entered in favor of Royal White.

>SUBMITTED BY:
>S/Harry E. Morse
>Bohman Morse, L.L.C.
>400 Poydras Street
>New Orleans, LA 70130
>
>Cayce Peterson
>JJC Law, LLC
>111 Veterans Memorial Blvd
>Metairie, LA 70005

## CERTIFICATE OF SERVICE

I certify that on August 18, 2025, the foregoing document was served via the Court's CM/ECF Document Filing System, to all counsel.

S/Harry E. Morse

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 2854 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

This document has been prepared in a proportionally spaced typeface using Microsoft Word version 2507, in Times New Roman 14 point font.

S/Harry E. Morse